## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**MARGARITA FERNANDEZ**,                                  :
Individually, as Trustee of the Fernandez            :
Family Trust, and as Executrix of the                :
Estate of Humbert Fernandez, Sr.,                    :
and such Heirs, Successors, and Assigns,             :
1215 Falster Court, Alexandria, VA  22308            :
**HUMBERT FERNANDEZ, JR.**,                              :
6110 Bristol Way, Alexandria, VA  22310              :
**LINDA M. JOHNSTON**,                                   :
18711 Fountain Terrace, Hagerstown, MD  21724        :
**LISA M. NOVAK**,                                       :
1029 Coulson Lane, Bluemont, VA  20135               :
and                                                  :
**M C M PARKING CO., INC.**,                             :
1101 15th Street, NW #206, Washington, D.C.  20005   :       Civil Action No. _____
                                                     :
                      Plaintiffs,                    :
                                                     :
            v.                                       :
                                                     :
**TIMOTHY A. JONES, SR.**,                               :
1202 Chasbarb Terrace, Herndon, VA  20170            :
**CECIL S. (ROCKY) JONES**,                              :
9301 Branchside Lane, Fairfax, VA  22031             :
and                                                  :
**MCM PARKING SOLUTIONS, INC.**,                         :
1433 Parkwood Place, NW, Washington, D.C.  20010     :
                                                     :
                      Defendants.                    :       JURY TRIAL DEMANDED

## COMPLAINT

Plaintiffs, Margarita Fernandez, Individually, as Trustee of the Fernandez Family Trust,

and as Executrix of the Estate of Humbert Fernandez, Sr., and such Heirs, Successors, and

Assigns, Humbert Fernandez, Jr., Lisa M. Novak, Linda M. Johnston, and M C M Parking Co.,

Inc., by and through their counsel, Linowes and Blocher LLP and Rhoads & Sinon LLP, file the within Complaint as follows:

## PARTIES

1.    Plaintiff Margarita Fernandez is an adult citizen residing in Virginia.  Margarita Fernandez is a named Plaintiff to this lawsuit in her individual capacity, as the Trustee of the Fernandez Family Trust, and as Executrix of the Estate of Humbert Fernandez, Sr., and such heirs, successors, and assigns (the latter hereinafter referred to as the "Estate of Humbert Fernandez, Sr.").

2.    Plaintiff Humbert Fernandez, Jr. is an adult citizen residing in Virginia.

3.    Plaintiff Lisa M. Novak is an adult citizen residing in Virginia.

4.    Plaintiff Linda M. Johnston is an adult citizen residing in Maryland.

5.    Plaintiff M C M Parking Co., Inc. ("MCM") is a District of Columbia corporation with its principal place of business in the District of Columbia.

6.    The ownership of MCM is as follows: The Estate of Humbert Fernandez, Sr. (Margarita Fernandez, Executrix) – 20%; Humbert Fernandez, Jr. – 10%, Lisa M. Novak – 10%, Linda M. Johnston – 10%; Timothy A. Jones – 25%; and Cecil S. (Rocky) Jones – 25%.

7.    There is no shareholders' agreement in place with respect to the rights and ownership interests of the shareholders of MCM.

8.    Defendant Cecil S. (Rocky) Jones, upon information and belief, is an adult citizen residing in Virginia.

9.    Defendant Timothy A. Jones, upon information and belief, is an adult citizen residing in Virginia.

10.    Defendants Cecil S. (Rocky) Jones and Timothy A. Jones are herein collectively referred to as the "Individual Defendants."

11.    Defendant MCM Parking Solutions, Inc. ("New MCM") is, upon information and belief, a District of Columbia corporation with its principal place of business in the District of Columbia.

12.    Upon information and belief, the Individual Defendants are owners, shareholders, representatives, managers, officers, and/or employees of New MCM.

## JURISDICTION AND VENUE

13.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1367, and 15 U.S.C. § 1121(a).

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND

15.    MCM was formed in 1968.

16.    MCM is in the business of owning and/or operating automobile and other motor vehicle parking and storage lots in and around the District of Columbia and elsewhere.

17.    Through its extensive history, MCM has developed substantial goodwill, both in its business operations and in its name, in the District of Columbia.

18.    At the time of its formation, and until approximately 1971, MCM was owned by Humbert Fernandez, Sr., Cecil Jones, and Edward O'Brien.

19.    From approximately 1971 until approximately 1998, MCM was owned equally by Humbert Fernandez, Sr. and Cecil Jones.

20.    Cecil Jones was the father of the Individual Defendants.

21.    Cecil Jones died in 1999.

22.     Prior to his death, Cecil Jones had become incapacitated and unable to perform duties on behalf of MCM.

23.     Sometime after such incapacity commenced, Cecil Jones transferred all or a portion of his ownership in MCM equally to his sons, the Individual Defendants.

24.     Humbert Fernandez, Sr. died in March 2006.

25.     In 1998, Humbert Fernandez, Sr. transferred sixty percent (60%) of his ownership interest in MCM to his children, Humbert Fernandez, Jr., Lisa M. Novak, and Linda M. Johnston, in equal shares.

26.     In conjunction with the death of Humbert Fernandez, Sr., his remaining ownership in MCM transferred to the Estate of Humbert Fernandez, Sr. (Margarita Fernandez, Executrix).

27.     During the period in which Cecil Jones and Humbert Fernandez, Sr. owned and controlled MCM, each was paid substantial amounts as "salary" and "bonus" in order to minimize taxes that would have otherwise been imposed on MCM.

28.     Specifically, Messrs. Fernandez and Jones structured the compensation such that the corporation would make little or no distributions to themselves as shareholders, such funds instead being paid to them as salary and bonus. These amounts are referred to herein as "Monthly Administrative Proceeds" which means gross monthly revenues, less expenses (other than compensation of any shareholder) and retainage.

29.     As evidence that such payments were not intended to be actual salary, such payments continued to Cecil Jones even after he had become wholly incapacitated and unable to perform services on behalf of MCM.

30.     Shortly before the death of Cecil Jones, his "salary" and "bonus" plan were re-directed to be divided equally (less a small amount that was added to Humbert Fernandez Sr.'s "salary") between his sons, the Individual Defendants.

31.     This was in addition to the salaries the Individual Defendants already received as employees of MCM.

32.     Upon the death of Humbert Fernandez, Sr. in March 2006, the Individual Defendants seized control of MCM and, as set forth herein, have operated it in a manner inconsistent with their fiduciary obligations of good faith, fair dealing, due care, loyalty, and full, candid and adequate disclosure.

33.     The Individual Defendants refused to continue to re-direct the payment of amounts previously paid to Humbert Fernandez, Sr. to Plaintiffs, as was done previously for the Individual Defendants.

34.     Prior to the death of Humbert Fernandez, Sr. in March 2006, the split was approximately 44% of Monthly Administrative Proceeds to the Fernandez family and 56% of Monthly Administrative Proceeds to the Jones family, whether in the form of salaries, bonuses, or other distributions.

35.     In April 2006, Plaintiff Humbert Fernandez, Jr. met with the Individual Defendants regarding the distribution of the Monthly Administrative Proceeds.

36.     At that meeting, Plaintiff Humbert Fernandez, Jr. proposed, and the Individual Defendants agreed to, a split of Monthly Administrative Proceeds between the Jones and Fernandez families of 2/3 to the Jones family and 1/3 to the Fernandez family.

37.     Subsequently, payments were made to the Fernandez family in accordance with that agreement.

38.     However, in May 2006, the Individual Defendants stopped making such payments to the Fernandez family but attempted to retain their salary increases.

39.     After being advised that such increases were impermissible, the Individual Defendants continued to take approximately 56% of the Monthly Administrative Proceeds for themselves as "salary."

40.     The remaining 44% of Monthly Administrative Proceeds, which were provided to the Fernandez family prior to the death of Humbert Fernandez, Sr., are no longer provided to the Fernandez family.

41.     Instead, according to the Individual Defendants, they have decided to place those funds into MCM and, as appropriate, distribute those amounts to the shareholders.

42.     As a result, under the Individual Defendants' unilateral alteration, and assuming those funds were actually distributed, the Jones family would receive between 78% and 100% of all revenues of MCM, while the Fernandez family would receive between 0% and 22% of all revenues.

43.     None of the Plaintiffs ever agreed to such a process.

44.     At all times prior to the death of Humbert Fernandez, Sr., all shareholders of MCM knew and understood that the amounts paid as "compensation" to Humbert Fernandez, Sr., and Cecil Jones (and later to the Individual Defendants) actually constituted the distribution of profits of MCM and would be available to the new owners of MCM upon the death of Humbert Fernandez, Sr., in the same manner as was done for the Individual Defendants.

45.     All shareholders knew and understood that such payments were made as shareholders of the corporation, as evidenced by the fact that upon the death of Cecil Jones, his compensation was simply re-directed to his sons, and by the fact that portions of the

compensation of Humbert Fernandez, Sr. was re-directed to his children after transfer of his ownership interest in MCM.

46.     Specifically, after the transfer of a portion of ownership in MCM to the children of Humbert Fernandez, Sr. in 1998, when employee "bonuses" were paid to the Individual Defendants, corresponding payments were made to Plaintiffs on a pro rata basis.

47.     The parties knew and intended, at all times, that the salary paid to Humbert Fernandez, Sr., and any bonuses paid to him, would be re-directed upon his death or other transfer of his ownership interest in MCM to the new shareholders, in the same manner was done for the Individual Defendants.

48.     Despite such knowledge, the Individual Defendants have refused to re-direct such payments.

49.     Instead, the Individual Defendants, without the approval of a majority of the shareholders of MCM, have taken the position that the amounts previously paid to Humbert Fernandez, Sr. would be retained by MCM and distributed to the shareholders on a pro rata basis.

50.     However, by taking such a position, the Individual Defendants have created a windfall to themselves to the detriment of Plaintiffs.

51.     Specifically, the inflated salaries and bonuses paid by MCM to the Individual Defendants was, as set forth above, never intended to be compensation for services rendered; instead, such amounts were intended to represent the Individual Defendants' profit distributions from MCM.

52.     By retaining the amounts previously paid to Humbert Fernandez, Sr., the Individual Defendants have effectively obtained one-half of the payments previously paid to

Humbert Fernandez, Sr., despite the fact that they already receive 56% of all Monthly Administrative Proceeds of MCM.

53.    Additionally, Plaintiffs have questioned the Individual Defendants about the payments which they have been receiving since 1998, in the form of "consulting fees."

54.    Plaintiffs believe that the payments received by them are inconsistent with the true financial status of MCM.

55.    To that end, Plaintiffs have noticed irregularities in the financial statements and/or reports issued by the Individual Defendants.

56.    Despite requests from Plaintiffs, however, the Individual Defendants have not provided sufficient documentation to enable Plaintiffs to adequately ascertain the propriety of the Individual Defendants' operation of MCM or to account for the above-mentioned financial irregularities.

57.    At the time of the death of Humbert Fernandez, Sr. in March 2006, MCM operated four parking garages.

58.    Due to the Individual Defendants' mismanagement and self-dealing, as described more fully herein, as of the date this Complaint is being filed, MCM no longer operates, or soon will no longer operate, any parking garages.

59.    One of the four parking garages operated at the time of Humbert Fernandez, Sr.'s death was known as the "G Street Garage."

60.    The other three parking garages operated at the time of Humbert Fernandez, Sr.'s death were all owned by the same entity, and will be referred to collectively as the "Rockrose Properties."

61.    MCM had operated the G Street Garage under a written agreement since at least 2001.

62.    The G Street Garage agreement expired on July 31, 2006.

63.    Prior to that date, discussions were held between the Individual Defendants and representatives of Plaintiffs regarding the propriety of seeking a new agreement with respect to operation of the G Street Garage.

64.    During these conversations, the Individual Defendants downplayed the financial viability of the G Street Garage and did not provide any information showing that the operation of the G Street Garage could be financially successful, causing Plaintiffs to believe that there was no benefit to MCM in pursuing that contract.

65.    At the same time, however, the Individual Defendants indicated that renewing the G Street Garage would give them a "place to work."

66.    Accordingly, based upon the Individual Defendants' representations that the property had been operating at a deficit, and because the Individual Defendants had not provided any evidence that the garage could be operated profitably, Plaintiffs advised the Individual Defendants that they did not believe that a renewal of that contract would be in the best interests of MCM.

67.    Unbeknownst to Plaintiffs, the Individual Defendants were, at the same time, planning to establish a business to compete with MCM (Defendant New MCM) and to seek a contract for operation of the G Street Garage.

68.    Unbeknownst to Plaintiffs, New MCM sought and obtained the contract for operation of the G Street Garage.

69.     Unbeknownst to Plaintiffs, New MCM utilized the corporate name and goodwill of MCM to obtain the G Street Garage contract.

70.     In fact, for over one year, New MCM has been operating the G Street Garage under the guise of MCM.

71.     From at least August 1, 2006 to the present, New MCM has been using signage owned by MCM and representing to the public that MCM is operating the G Street Garage. Photographs taken to that effect are attached hereto as Exhibits "A" through "D."

72.     The pictures, which were taken on August 3, 2007, clearly show that the G Street Garage is being operated by New MCM with the aid of signs and signage that were installed during MCM's operation.

73.     For example, Exhibit "A" is a picture of a sidewalk sign for the G Street Garage. The bottom of the sign reads: "SINCE 1968."

74.     In addition, Exhibit "D" is a photograph of the "Rates" sign located just inside the G Street Garage.  The top of this sign reads: "MCM PARKING CO."

75.     New MCM's false and misleading representations to the public are further evidence of the value of the corporate name and goodwill of MCM.

76.     Neither MCM, nor Plaintiffs (as fifty percent (50%) shareholders of MCM), ever gave the Individual Defendants authorization to operate a business that competes directly with MCM.

77.     Since seizing control of MCM, the Individual Defendants have not, to Plaintiffs' knowledge, done anything to solidify the business operations of MCM, or to secure new business opportunities for MCM.

78.    Regarding the Rockrose Properties (i.e. the remaining three garages discussed above), MCM has been operating those garages for at least 20 years.

79.    MCM operated the Rockrose Properties on a month-to-month basis and, therefore, such operation could be terminated by the owner or its representative at any time.

80.    The recently-appointed property management company for the Rockrose Properties, Jones Lang LaSalle, is well-known in the parking garage industry.

81.    In or around September 2006, Jones Lang LaSalle issued a "Request for Proposals" for the continued operation of the Rockrose Properties.

82.    Plaintiffs requested the Individual Defendants to make contact with Jones Lang LaSalle on behalf of MCM in an effort to secure a continued relationship for the operation of the Rockrose Properties.

83.    Specifically, Plaintiffs requested that the Individual Defendants submit a proposal to Jones Lang LaSalle and take all necessary steps to ensure that MCM would be selected to continue the operation of the Rockrose Properties.

84.    Instead, the Individual Defendants submitted a proposal that would have effectively bankrupted MCM.

85.    Specifically, the proposal submitted by the Individual Defendants would have caused irreparable harm to MCM, and contained projections which were unrealistic and unattainable.

86.    The proposal was not accepted.

87.    As a result, after more than 20 years, MCM will no longer operate the Rockrose Properties after August 31, 2007.

88.     At no point during that proposal process did the Individual Defendants disclose that they were operating a competing business.

89.     Based upon the facts known to Plaintiffs with respect to New MCM and the G Street Garage, Plaintiffs believe that the Individual Defendants are not acting in the best interests of MCM and, in fact, are acting in their own best interests or in the best interests of New MCM.

90.     In fact, because of the Individual Defendants' inherent conflict of interest, through the ownership, operation, and control of New MCM, the Individual Defendants are, as a matter of law, incapable of rendering decisions in the best interests of MCM with regard to business operations.

91.     Plaintiffs have identified numerous opportunities and "leads" upon which the Individual Defendants may act to further the business interests of MCM.

92.     Despite having this information, the Individual Defendants have failed to pursue any new business opportunities on behalf of MCM since seizing control in 2006.

93.     In fact, as early as May 2006, the Individual Defendants raised the issuing of closing the operations of MCM.

94.     Most recently, in July 2007, the Individual Defendants have again proposed that further operation of MCM be discontinued.

95.     Given the Individual Defendants' inherent conflict of interest, and given their actions with respect to New MCM, the G Street Garage, and the Rockrose Properties, a custodian must be appointed to act in the best interests of MCM with respect to future operations.

96.     The Individual Defendants' egregious mismanagement of MCM (including, but not limited to, diverting the G Street Garage to New MCM, losing the Rockrose Properties, and

failing to pursue any new business ventures) is, at best, a violation of the Individual Defendants' fiduciary duty of care.

97.      More likely, however, and upon information and belief, said mismanagement is indicative of the Individual Defendants' calculated effort to eliminate MCM as an ongoing concern in favor of their new business venture—New MCM.

## STATUS OF SHAREHOLDER DERIVATIVE ACTION

98.      By virtue of the closely held nature of MCM, a derivative action on behalf of the company need not be initiated to enforce Plaintiffs' individual rights as shareholders of MCM.

99.      That notwithstanding, to the extent Plaintiffs, as shareholders of MCM, are seeking to protect the interests of MCM itself, the requisite formalities of bringing a shareholder derivative action, as governed by Fed. R. Civ. P. 23.1, have been satisfied:

      a.      Plaintiffs are all stockholders of MCM;

      b.      Plaintiffs obtained their shares of MCM from Humbert Fernandez, Sr., who was a stockholder at the time of certain transactions complained of herein;

      c.      Plaintiffs themselves were stockholders of MCM at the time of certain transactions complained of herein; and

      d.      this action is not a collusive attempt to confer jurisdiction on this Court which it would not otherwise have.

100.      Furthermore, due to the nature of this action and MCM's internal governance, no demand has, or could have, successfully been made upon the Individual Defendants to institute this action for the following reasons:

      a.      the Individual Defendants own 50% of MCM;

b.      the Individual Defendants have committed the acts which are the subject of this action and, thus, it would be necessary for them to sue themselves in order to properly prosecute this action; and

c.      despite the Individual Defendants' knowledge of the matters complained of herein, they have willfully failed and refused to cease their unlawful conduct or permit redress therefor.

101.    By reason of the foregoing, any demand by Plaintiffs on the Individual Defendants to commence this action on behalf of MCM would have been, and is, futile.

### COUNT I
### Plaintiffs v. Individual Defendants
### Breach of Contract

102.    Plaintiffs incorporate the above allegations as though fully set forth herein.

103.    In or around April 2006, Plaintiffs and the Individual Defendants reached an agreement concerning the distribution of proceeds as follows: MCM's Monthly Administrative Proceeds would be split between the Jones and Fernandez families so that 1/3 of the proceeds would go to the Fernandez family and the remaining 2/3 would go to the Jones family.

104.    Subsequently, payments were made to the Fernandez family in accordance with that agreement.

105.    However, in May 2006, the Individual Defendants unilaterally stopped making such payments to the Fernandez family and have retained approximately 56% of the Monthly Administrative Proceeds for themselves as "salary."

106.    The remaining 44% of Monthly Administrative Proceeds, which were provided to the Fernandez family prior to the death of Humbert Fernandez, Sr., are no longer provided to the Fernandez family.

107.     Instead, the Individual Defendants, purportedly have placed those funds into MCM and, as appropriate, distribute those amounts to the shareholders.

108.     As a result, the Jones family would receive between 78% and 100% of all revenues of MCM, while the Fernandez family would receive between 0% and 22% of all revenues.

109.     The Individual Defendants' failure to make the payments as described above constitutes a breach of their agreement with Plaintiffs.

110.     Plaintiffs have suffered, and will continue to suffer, financial harm as a result of the Individual Defendants' breach.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against the Individual Defendants, in an amount in excess of $75,000.00, plus interest, costs, and attorney's fees and all other relief deemed proper by the Court.

## COUNT II
### Plaintiffs v. Individual Defendants
### Breach of Fiduciary Duty

111.     Plaintiffs incorporate the above allegations as though fully set forth herein.

112.     The Individual Defendants, by virtue of their position as stockholders, employees, officers, and directors in a closely held corporation, are in a fiduciary relationship with Plaintiffs, and owe Plaintiffs the highest obligations of good faith, fair dealing, due care, loyalty and full, candid and adequate disclosure.

113.     By virtue of their status as fiduciaries, the Individual Defendants were and are under a duty: to act in the best interests of Plaintiffs; to act not solely in their own self-interest; and to act in accordance with their fundamental fiduciary duties of care and loyalty.

114.    The Individual Defendants have violated these fiduciary duties owed to Plaintiffs in several respects, including, but not necessarily limited to:

a.      failing to pursue any and all available business opportunities for MCM;

b.      failing to provide information to Plaintiffs regarding certain contracts and potential contracts of MCM;

c.      opening and operating a separate business that competes directly with MCM without disclosing such information to Plaintiffs or obtaining the consent of Plaintiffs to operate such business;

d.      misappropriating and diverting of resources of MCM for the benefit of New MCM or for the benefit of themselves;

e.      improperly utilizing the corporate name, goodwill, and other assets of MCM for their own benefit, and for the benefit of New MCM;

f.      diverting former business of MCM, or business opportunities for MCM, to New MCM;

115.    By the acts described herein, the Individual Defendants have violated their fiduciary duties owed to Plaintiffs and are using their positions as shareholders, employees, officers, and directors for the purpose of benefiting themselves to the detriment of Plaintiffs.

116.    By the acts described herein, the Individual Defendants have violated their fiduciary duties owed to Plaintiffs and are using their positions as shareholders, employees, officers, and directors for the purpose of benefiting New MCM to the detriment of Plaintiffs.

117.    As a direct and proximate result of the Individual Defendants' breach of their fiduciary duties, Plaintiffs have suffered, and will continue to suffer, irreparable harm.

118.    Unless the Individual Defendants are enjoined from misappropriating and misusing the corporate assets of MCM, and are enjoined from not acting in the bests interests of and for the benefit of MCM, Plaintiffs will continue to suffer irreparable harm for which money damages are not sufficient.

119.    MCM has been harmed, and will continue to be harmed, so long as the Individual Defendants are permitted to operate a business that is in direct conflict with MCM.

120.    Any business opportunities that New MCM obtains, solicits, or considers are to the detriment of MCM, for whom the Individual Defendants owe a fiduciary duty.

121.    Because of the Individual Defendants' inherent conflict of interest, the Individual Defendants cannot act in the best interests of MCM with respect to potential business opportunities.

122.    The Individual Defendants have acted intentionally, recklessly and/or in a wanton manner and in careless disregard for the rights of Plaintiffs in breaching their fiduciary duties of care and loyalty, which they owed to Plaintiffs as set forth herein.

123.    As a result of the Individual Defendants' breach of their fiduciary duties, Plaintiffs are entitled to punitive damages.

WHEREFORE, Plaintiffs respectfully request that this Court:

a.    issue an injunction, enjoining and restraining the Individual Defendants from any action or conduct relating to any properties owned or operated by MCM Parking Co., Inc.;

b.    appoint a receiver and/or custodian to take charge of the assets and property of MCM Parking Co., Inc. pending the final disposition of this dispute;

c.      order the Individual Defendants to make an accounting of all monies obtained by them and by MCM from January 1, 2005 to the present;

d.      order a disgorgement of all amounts improperly retained by the Individual Defendants from revenues of MCM, and disgorgement of all amounts received in connection with New MCM;

e.      order an award of damages in an amount in excess of $75,000.00, plus interest, costs, and attorney's fees and all other relief deemed proper by this Court.

**COUNT III**
**Plaintiffs v. Individual Defendants**
**Fraud**

124.    Plaintiffs incorporate the above allegations as though fully set forth herein.

125.    The Individual Defendants owe to Plaintiffs a fiduciary duty to conduct the affairs of MCM in a non-fraudulent manner.

126.    Beginning in April 2006, the Individual Defendants failed to disclose an inherent conflict of interest to Plaintiffs regarding business opportunities for MCM.

127.    Such failure to disclose constituted representations regarding the financial viability of operation of the G Street Garage.

128.    Specifically, the Individual Defendants led Plaintiffs to believe, through documents, statements and actions, that continued operation of the G Street Garage was not financially viable or feasible.

129.    In fact, Individual Defendants indicated that the only value in operating the G Street Garage was that it would provide them with a "place to work" in the event MCM lost the Rockrose Properties.

130.    At no point during such discussions, or thereafter, did the Individual Defendants advise Plaintiffs that they were pursuing this same business opportunity on behalf of a new entity that was created (or was to be created) by the Individual Defendants in an effort to compete with MCM.

131.    Based upon the statements and documentation of the Individual Defendants, Plaintiffs agreed that MCM should not pursue another contract to operate the G Street Garage.

132.    However, at the time the Individual Defendants made such representations, they knew that such representations were false and misleading, and knew that they had not disclosed all relevant information and documentation to Plaintiffs.

133.    Specifically, the Individual Defendants knew and intended that they would usurp the business opportunities of MCM through the formation of New MCM and solicitation of the business formerly controlled by MCM.

134.    The Individual Defendants knew and intended that Plaintiffs would rely upon their representations, and omissions of information, and that Plaintiffs were not aware of the Individual Defendants' business plans.

135.    Plaintiffs justifiably relied on the Individual Defendants' misleading representations and intentional omissions of information.

136.    Had Plaintiffs known that the Individual Defendants had formed a new entity, or were seeking on their own to obtain the contract for operation of the G Street Garage, Plaintiffs would not have, without further consideration of facts, circumstances, and evidence, agreed that MCM should not pursue a new G Street Garage contract.

137.    MCM has been harmed, and will continue to be harmed, by the usurpation of business opportunities related to the G Street Garage.

138.    As a direct and proximate result of the Individual Defendants' misrepresentations regarding the G Street Garage, Plaintiffs have suffered, and will continue to suffer, damages.

139.    The Individual Defendants' conduct was willful, malicious, intentional, wanton and/or reckless, thereby entitling Plaintiffs to an award of punitive damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against the Individual Defendants, including punitive damages, in an amount in excess of $75,000.00, plus interest, costs, and attorney's fees and all other relief deemed proper by the Court.

## COUNT IV
### Plaintiffs v. Individual Defendants
### Wrongful Diversion of Corporate Opportunity

140.    Plaintiff incorporates the above allegations as though fully set forth herein.

141.    The Individual Defendants have violated their fiduciary duties owed to Plaintiffs by opening and operating a separate business (New MCM) that competes directly with MCM without disclosing such information to Plaintiffs; and diverting former business of MCM to New MCM though false and misleading statements.

142.    The Individual Defendants, without Plaintiff's knowledge, pursued business opportunities germane to MCM on behalf of a new entity that was created in an effort to compete with MCM.

143.    Specifically, the Individual Defendants intended to usurp the business opportunities to which MCM was entitled through the formation of New MCM and the solicitation of business formerly controlled by MCM.

144.    MCM has been harmed, and will continue to be harmed, by the usurpation of business opportunities related to the G Street Garage or any other property.

145.     The Individual Defendants' conduct was willful, malicious, intentional, wanton, and/or reckless, thereby entitling Plaintiffs to an award of punitive damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against the Individual Defendants, including punitive damages, in an amount in excess of $75,000.00, plus interest, costs, attorney's fees and all other relief deemed proper by the Court.

**COUNT V**
**Plaintiffs v. All Defendants**
**Conversion**

146.     Plaintiffs incorporate the above allegations as though fully set forth herein.

147.     The Individual Defendants deprived Plaintiffs of monies and financial opportunities through the fraudulent and unauthorized activity as set forth more fully above.

148.     The Individual Defendants, by virtue of their fiduciary relationship with Plaintiffs, did not have lawful justification to seek, solicit, or obtain a contract for operation of the G Street Garage for their own benefit or the benefit of New MCM, and the Individual Defendants were aware of this fact.

149.     Despite such knowledge, the Individual Defendants obtained such a contract.

150.     The Individual Defendants did not have lawful justification to obtain such contract.

151.     Moreover, Defendants have utilized the corporate name, goodwill, and other assets of MCM for their own benefit.

152.     Defendants did not have lawful justification to use such name, goodwill and assets of MCM for their benefit, and to the direct detriment of MCM.

153.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, damages.

154.    Defendants' conduct was willful, malicious, intentional, wanton and/or reckless, thereby entitling Plaintiffs to an award of punitive damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants, including punitive damages, in an amount in excess of $75,000.00, plus interest, costs, and attorney's fees and all other relief deemed proper by the Court.

**COUNT VI**
**Plaintiffs v. All Defendants**
**Misappropriation**

155.    Plaintiffs incorporate the above allegations as though fully set forth herein.

156.    The actions of the Individual Defendants in utilizing the business opportunities, corporate name, goodwill and other assets of MCM without the authorization of Plaintiffs or MCM constituted a misappropriation of such assets.

157.    The actions of New MCM, in utilizing the corporate name, goodwill, and other assets of MCM, without the authorization of Plaintiffs or MCM, constituted a misappropriation of those assets.

158.    Defendants benefited from such misappropriation, and Plaintiffs have been, and continue to be, harmed by such misappropriation.

159.    As a direct and proximate result of Defendants' misappropriation of MCM's business opportunities, corporate name, and goodwill, Plaintiffs have suffered, and will continue to suffer, damages.

160.    Defendants' conduct was willful, malicious, intentional, wanton and/or reckless, thereby entitling Plaintiffs to an award of punitive damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants, including punitive damages, in an amount in excess of $75,000.00, plus interest, costs, and attorney's fees and all other relief deemed proper by the Court.

## COUNT VII
### Plaintiffs v. All Defendants
### Unjust Enrichment

161.    Plaintiffs incorporate the above allegations as though fully set forth herein.

162.    The Individual Defendants have received funds from operation of New MCM, despite the fact that, by virtue of their status as fiduciaries, they were not permitted to act against the best interests of MCM.

163.    As set forth herein, the Individual Defendants have ignored their fiduciary responsibilities to MCM, to the detriment of MCM, through the establishment and operation of New MCM, a competing business and, specifically, but not limited to, obtaining a contract for operation of the G Street Garage.

164.    The Individual Defendants have also retained a portion of amounts previously paid to Humbert Fernandez, Sr. as "compensation," when such amounts were intended to be distributed on a pro rata basis to Plaintiffs..

165.    The retention of such amounts by the Individual Defendants would be unjust, particularly in light of the fact that they continue to receive substantial compensation, far in excess of what is fair and reasonable to be paid for operation of the business, paid as salary but which in reality constitutes profits of MCM.

166.    Plaintiffs will suffer substantial injuries if the Individual Defendants are permitted to retain proceeds associated with the operation of the G Street Garage and portions of the amounts previously paid to Humbert Fernandez, Sr. as compensation.

167.    Moreover, Defendants have utilized the corporate name, goodwill, and other assets of MCM for their own benefit.

168.    Neither MCM nor Plaintiffs authorized the utilization of such assets by Defendants.

169.    Plaintiffs will continue to suffer substantial damages if Defendants are permitted to retain the proceeds associated with the utilization of such assets.

170.    Defendants will be unjustly enriched if they are permitted to retain proceeds or value associated with the above actions.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants in an amount in excess of $75,000.00, plus interest, costs, and attorney's fees and all other relief deemed proper by the Court.

## COUNT VIII
### MCM Parking Co., Inc. v. All Defendants
### Unfair Competition under Common Law and Lanham Act § 43(a):
### Trade Name & Trade Dress Infringement

171.    Plaintiffs incorporate the above allegations as though fully set forth herein.

172.    Plaintiff MCM Parking Co., Inc. has used its trade name in and around the District of Columbia for more than 35 years.

173.    Similarly, the signage used and buildings operated by MCM are unique to MCM and constitute protected trade dress.

174.    Neither MCM's trade name nor its trade dress are registered with the U.S. Patent and Trademark Office.

175.    Nonetheless, due to the fact that MCM has been in business for over 35 years, its trade name and trade dress have developed a secondary meaning within the minds of the relevant

public, and thus, both the trade name and trade dress are afforded protection against infringement.

176.    Defendants' use of the trade name "MCM Parking Solutions, Inc." and trade dress similar to that of MCM, which it uses to promote, market, and/or sell identical services as "MCM Parking Co., Inc." in interstate commerce, constitutes unfair competition pursuant to the common law and 15 U.S.C. § 1125(a).

177.    The use of the trade name "MCM Parking Solutions, Inc." and the trade dress similar to that of "MCM Parking Co., Inc." is likely to cause confusion, mistake, and deception among consumers.

178.    In addition, Defendants' use of the trade name "MCM Parking Solutions, Inc." is in violation of D.C. Code § 29-301.07(2), which provides that a corporate name "[s]hall not be the same as, or deceptively similar to, the name of any domestic corporation … ."

179.    Defendants' bad faith is evidenced by their brazen utilization of the signs, name, goodwill and other assets of MCM in operation of the G Street Garage, as set forth herein.

180.    Defendants' unfair competition has caused and will continue to cause damage to MCM Parking Co., Inc., and is causing irreparable harm to MCM Parking Co., Inc. for which there is not adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests that this Court:

a.    issue an injunction, enjoining and restraining Defendants from using the MCM Parking Solutions, Inc. trade name or trade dress which is likely to cause confusion with MCM Parking Co., Inc. in connection with the description, marketing, promotion, advertising, or sale of parking garage services;

b.       order an award of damages in an amount in excess of $75,000.00, plus interest;

c.       order an award of treble damages as provided by § 35(a) of the Lanham Act;

d.       order an award of attorney's fees and costs as provided by § 35(a) of the Lanham Act; and

e.       any other relief deemed proper by this Court.

**COUNT IX**
**MCM Parking Co., Inc. v. All Defendants**
**Unfair Competition under Lanham Act § 43(a):**
**Deceptive Trade Practices; Passing Off**

181.    Plaintiffs incorporate the above allegations as though fully set forth herein.

182.    Defendants have chosen and are using the trade name "MCM Parking Solutions, Inc." for the sole purpose of capitalizing on the goodwill and value that MCM has established in the name "MCM" during its 35 years in business.

183.    The likely effect of Defendants' use of the trade name "MCM Parking Solutions, Inc." is to induce the relevant public into believing that MCM Parking Solutions, Inc. is, in fact, MCM Parking Co., Inc.

184.    Defendants' use of the trade name "MCM Parking Solutions, Inc." and the trade dress similar to that of MCM, which it uses to promote, market, and/or sell identical services as "MCM Parking Co." in interstate commerce, constitutes unlawful "passing off" pursuant to the common law and 15 U.S.C. § 1125(a).

185.    The use of the trade name "MCM Parking Solutions, Inc." and the trade dress similar to that of "MCM Parking Co., Inc." is likely to cause confusion, mistake, and deception among consumers.

186.     In addition, Defendants' use of the trade name "MCM Parking Solutions, Inc." is in violation of D.C. Code § 29-301.07(2), which provides that a corporate name "[s]hall not be the same as, or deceptively similar to, the name of any domestic corporation … ."

187.     Defendants' unfair competition has caused and will continue to cause damage to MCM Parking Co., Inc., and is causing irreparable harm to MCM Parking Co., Inc. for which there is no adequate remedy at law.

WHEREFORE, Plaintiff respectfully requests that this Court:

a.     issue an injunction enjoining and restraining Defendants from using the MCM Parking Solutions, Inc. trade name or trade dress which is likely to cause confusion with MCM Parking Co., Inc. in connection with the description, marketing, promotion, advertising, or sale of parking garage services;

b.     order an award of damages in an amount in excess of $75,000.00, plus interest;

c.     order an award of treble damages as provided by § 35(a) of the Lanham Act;

d.     order an award of attorney's fees and costs as provided by § 35(a) of the Lanham Act; and

e.     any other relief deemed proper by this Court.

## COUNT X
## MCM Parking Co., Inc. v. All Defendants
## False Advertising

188.     Plaintiffs incorporate the above allegations as though set forth fully herein.

189.    By engaging in the activities described above, Defendants have made and are making false, deceptive, and misleading statements constituting false representations and false advertising in connection with its services.

190.    The false representation that New MCM is the same business as MCM, impliedly contained in Defendants' advertising and signage, is likely to deceive and influence the customers and prospective customers of MCM.

191.    Defendants' acts described above have caused irreparable injury to MCM's goodwill and reputation and, unless enjoined by this court, will cause further irreparable injury.

WHEREFORE, Plaintiff respectfully requests that this Court:

a.    issue and injunction enjoining and restraining Defendants from falsely advertising its services as that of MCM, which is likely to cause confusion with MCM in connection with the description, marketing, promotion, advertising, or sale of parking garage services; and

b.    order an award of damages in an amount in excess of $75,000.00, plus interest, costs, attorney's fees and all other relief deemed proper by the Court.

## COUNT XI
### MCM Parking Co., Inc. v. All Defendants
### Common Law Trademark Infringement

192.    Plaintiff incorporates the above allegations as though fully set forth herein.

193.    Plaintiff MCM's use of the trade name "MCM Parking Co., Inc." and its distinct trade dress, which it uses to promote, market, and/or sell its services as an operator of parking garages in and around the District of Columbia, has been in continuous effect for over 35 years.

194.    As a result, MCM has priority over New MCM with regard to using its trade name and trade dress.

195.    Defendants' use of the trade name "MCM Parking Solutions, Inc." and the trade dress similar to that of MCM, which it uses to promote, market, and/or sell identical services as MCM, constitutes common law trademark infringement.

196.    The use of the trade name "MCM Parking Solutions, Inc." and the trade dress similar to that of MCM is likely to cause confusion, mistake, and deception among consumers.

WHEREFORE, Plaintiff respectfully requests that this Court:

a.    issue and injunction enjoining and restraining Defendants from using the "MCM Parking Solutions, Inc." trade name or trade dress which is likely to cause confusion with MCM in connection with the description, marketing, promotion, advertising, or sale of parking garage services; and

b.    order an award of damages in an amount in excess of $75,000.00, plus interest, costs, attorney's fees and all other relief deemed proper by the Court.

### COUNT XII
**MCM Parking Co., Inc. v. All Defendants**
**Tortious Interference with Business Relations and Contracts**

197.    Plaintiffs incorporate the above allegations as though fully set forth herein.

198.    MCM held contracts with various persons and businesses in and around the District of Columbia.

199.    The actions taken by Defendants, as set forth above, were intended to harm MCM by interfering with MCM's business relationships.

200.    Defendants lack privilege or justification for such interference.

201.    In fact, the Individual Defendants have a fiduciary duty to act in the best interest of MCM.

202.    The business and contractual relationships interfered with by Defendants include, but are not necessarily limited to, the G Street Garage.

203.    Upon information and belief, the Individual Defendants and New MCM have made efforts to obtain business which may be beneficial to the operation of MCM.

204.    As a result of Defendants' conduct, Defendants have jeopardized MCM's existing and prospective contractual relationships and business transactions related to parking garage services, and have caused, and will in the future cause, MCM to sustain harm.

205.    Defendants' conduct was willful, malicious, intentional, wanton and/or reckless, thereby entitling Plaintiffs to an award of punitive damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants, including punitive damages, in an amount in excess of $75,000.00, plus interest, costs, and attorney's fees and all other relief deemed proper by the Court.

### COUNT XIII
### MCM Parking Co. v. All Defendants
### Tortious Interference with Prospective Contracts

206.    Plaintiffs incorporate the above allegations as though fully set forth herein.

207.    The actions taken by Defendants, as set forth above, were intended to harm MCM by interfering with MCM's prospective contractual relationships.

208.    Specifically, Defendants knew and intended that their actions would impact MCM's ability to operate its business and would cause prospective customers to not enter into contracts with MCM or to enter into contracts with New MCM.

209.    Defendants lack privilege or justification for such interference.

210.     In fact, the Individual Defendants have a fiduciary duty to act in the best interest of MCM.

211.     The prospective business and contractual relationships interfered with by Defendants include, but are not necessarily limited to, the G Street Garage, the Rockrose Properties, and/or any other business opportunity obtained by New MCM or not sought by the Individual Defendants on behalf of MCM.

212.     As a result of Defendants' conduct, Defendants have impacted MCM's prospective contractual relationships and business transactions, and have caused, and will in the future cause, MCM to sustain harm.

213.     The Individual Defendants' conduct was willful, malicious, intentional, wanton and/or reckless, thereby entitling Plaintiffs to an award of punitive damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants, including punitive damages, in an amount in excess of $75,000.00, plus interest, costs, and attorney's fees and all other relief deemed proper by the Court.

## COUNT XIV
### Plaintiffs v. All Defendants
### Conspiracy

214.     Plaintiffs incorporate the above allegations as though fully set forth herein.

215.     The Individual Defendants and Defendant New MCM collectively acted with a common purpose to perform the unlawful acts of (1) diverting viable business opportunities away from MCM, in breach of the Individual Defendants' fiduciary duties; (2) tortiously interfering with MCM's existing and prospective business and contractual relations; and (3) infringing upon MCM's trade name and trade dress in order to capitalize on the company's goodwill and create consumer confusion as to the source of its services.

216.    The actions set forth herein constitute overt acts in furtherance of this common purpose.

217.    As a result of Defendants' collective actions and common purpose, Plaintiffs have suffered, and will continue to suffer both economic and non-economic harm, as set forth herein.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants, including punitive damages, in an amount in excess of $75,000.00, plus interest, costs, attorney's fees and all other relief deemed proper by the Court.

**COUNT XV**
**Accounting**

218.    Plaintiffs incorporate the above allegations as though fully set forth herein.

219.    To date, the Individual Defendants have ignored the rights of Plaintiffs with respect to the operation of MCM.

220.    Plaintiffs seek an accounting of the affairs of MCM because they have been wrongly excluded from the company's business and possession of its property by the Individual Defendants.

221.    Plaintiffs are entitled to an accounting and entitled to obtain access to corporate information such as the state of the business and financial condition of the company, copies of financial statements and tax returns, bank records, and contracts and other operating documents.

222.    Despite requests from Plaintiffs, the Individual Defendants have not provided sufficient documentation to Plaintiffs in order to enable Plaintiffs to ascertain the propriety of the Individual Defendants' operation of MCM.

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order directing the Individual Defendants to provide Plaintiffs with an accounting of the affairs of MCM from

January 2005 to the present, provide access to the information required to be maintained and provided under law, and grant such other relief as the Court deems appropriate.

## COUNT XVI
### Appointment of Custodian

223.    Plaintiffs incorporate the above allegations as though fully set forth herein.

224.    To date, the Individual Defendants have ignored the rights of Plaintiffs with respect to the operation of MCM.

225.    As evidenced by the allegations set forth above, the Individual Defendants have acted, and continue to act, in a manner detrimental to the interests of MCM.

226.    Plaintiffs, as 50% owner of MCM, are at a deadlock with the Individual Defendants, and do not agree with the operational activities and procedures, including the misappropriation of MCM resources to and for the benefit of New MCM, being instituted by the Individual Defendants.

227.    Plaintiffs request that a custodian be appointed by this Court to operate MCM in accordance with the appropriate Business Corporation Laws.

228.    Such custodian will operate MCM with the best interests of MCM in mind and without the inherent conflict of interest that currently exists with respect to the Individual Defendants.

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order appointing a custodian to operate MCM and grant such custodian with all necessary authority to operate MCM in a manner which is in the best interest of MCM during the pendency of this litigation.

Respectfully submitted,


By:    /s/ Jennifer D. Larkin
        Jennifer D. Larkin, Esquire
        D.C. Bar I.D. 49522
        Linowes and Blocher LLP
        7200 Wisconsin Avenue
        Bethesda, MD  20814
        (301) 961-5271


By:    /s/ Robert J. Tribeck
        Robert J. Tribeck, Esquire
        (motion to appear *Pro Hac Vice* pending)
        John R. Martin, Esquire
        (motion to appear *Pro Hac Vice* pending)
        RHOADS & SINON LLP
        One South Market Square
        P.O. Box 1146
        Harrisburg, PA  17108-1146
        (717) 233-5731

        *Attorneys for Plaintiffs*

# Exhibit "A"



# Exhibit "B"



# Exhibit "C"



# Exhibit "D"



# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| MARGARITA FERNANDEZ, Individually, as Trustee of the Fernandez Family Trust, and as Executrix of the Estate of Humber Fernandez, Sr., and such Heirs, Successors, and Assigns, HUMBERT FERNANDEZ, JR., LINDA M. JOHNSTON, LISA M. NOVAK, and M C M PARKING CO., INC. | TIMOTHY A. JONES, SR., CECIL S. (ROCKY) JONES, and MCM PARKING SOLUTIONS, INC. |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)

88888

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Jennifer D. Larkin, Esquire
Linowes and Blocher LLP
7200 Wisconsin Avenue
Bethesda, MD 20814
(301) 961-5271

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

◉ 3 Federal Question
(U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)**          OR          **○ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ⊙ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☒ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

15 U.S.C. § 1125(a): Trade name/dress infringement; deceptive trade practices/"passing off"; breach of fiduciary duty

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ > $75,000.00   Check YES only if demanded in complaint

JURY DEMAND:    YES ☒    NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE August 10, 2007    SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.