## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARGARITA FERNANDEZ, *et al.*,  ) | |
| ) | |
| Plaintiffs,  ) | |
| ) | |
| v.  ) | Civil Action No. 07-1448 (RMC) |
| ) | |
| TIMOTHY A. JONES, SR., *et al.*,  ) | |
| ) | |
| Defendants.  ) | |
| ) | |

## MEMORANDUM OPINION

This case is before the Court on Defendants' motion for summary judgment. *See* Dkt.

# 29. Humbert Fernandez, Sr., and Cecil Jones, Sr., established MCM Parking Co., Inc., decades

ago to operate parking garages in the District of Columbia. The business was owned in equal shares,

50/50 between them. Both men are now deceased and their descendants collectively still own MCM

50/50, although only the Jones family sons were still active in it when it ceased operations. The old

relationship has since frayed. Mr. Fernandez's family sued Cecil S. Jones and Timothy A. Jones in

a sixteen count Complaint for "hijacking the Company." Diversity jurisdiction is not asserted and

only two of the counts expressly allege violations of federal law: Count VIII alleges "Unfair

Competition under Common Law and Lanham Act § 43(a): Trade Name and Trade Dress

Infringement" and Count IX alleges "Unfair Competition under Lanham Act § 43(a): Deceptive

Trade Practices; Passing Off."[1] The Court finds that Defendants are entitled to summary judgment

---

[1] In addition, Plaintiffs now assert that Count X "False Advertising" also is brought under Lanham Act § 43(a), 15 U.S.C. § 1125(a), *see* Pls.' Opp'n to Defs.' Mot. for Summ. J. ("Pls.' Opp'n") [Dkt. # 30] at 8 n.1, although the Complaint does not so indicate and Plaintiffs initially took the position that all counts except for Counts VIII and IX "allege violations of, and seek remedies under, the common law." Pls.' Statement of the Case [Dkt. # 16] at 3. The Court will treat Count X as arising under Lanham Act § 43(a) for purposes of Defendants' motion for summary judgment.

on the Lanham Act claims, and it will decline to exercise supplemental jurisdiction over the remaining local law claims. The local law claims will be dismissed without prejudice.

## I. FACTS[2]

MCM Parking Co., Inc. was formed in 1968. It was "in the business of owning and/or operating automobile and other motor vehicle parking and storage lots in and around the District of Columbia and elsewhere." Compl. ¶ 16. The Defendants, known familiarly as "Rocky" and "Timmy" Jones, became employees of MCM Parking Co., Inc., in the mid-1970s. At that time, MCM was owned by Mr. Jones, Sr., and Mr. Fernandez, Sr., with each holding a 50% interest. The younger Joneses became shareholders of the company in 1991, each owning 15% of the stock purchased from their father's share. Each continued to be a working employee of MCM.

Mr. Jones, Sr., became ill in 1998 and was rendered unable to work.[3] At that point, Mr. Jones, Sr., transferred his remaining shares to his sons, the Defendants here, so that each owned 25% of MCM stock. Because of the additional responsibilities assumed by Defendants, they also renegotiated their salaries.

Mr. Fernandez, Sr., died in March 2006. Shortly after the funeral, Mr. Fernandez, Jr., came to the MCM office to collect his father's personal items. As Mr. Fernandez described this encounter, cleaning out the desk was the main purpose of his visit. *See* Pls.' Opp'n, Ex. E (Deposition of Humbert Fernandez, Jr. at 8. However, while he was there and "just to get things to move forward,"

---

[2] Because the Court does not reach the merits of the non federal law counts, the facts relevant to those counts are not discussed in detail.

[3] Mr. Jones, Sr., died in 1999.

then I proposed that everybody gets paid equally.  I don't know exactly what there was beforehand, but just to go forward, everybody be equal and just go on from there.

Q.   Can you recount for me as close as you can the actual conversation, the words you said and the words that they said in regard to that subject.

A.  Well, I proposed that we add up all the salaries [*i.e.*, the salaries of Mr. Fernandez, Sr. and the two Jones' sons] and then divide it by three, and I asked Timmy and I asked Rocky, because they were both there, and I said, "How does this sound? Is this okay?" And Timmy looked at Rocky, and they said, "Okay."

Q.  Okay to what?

A.  To splitting the salary.  Adding all the salaries together, and then splitting it evenly.

*Id.* at 8-9.  This proposal was designed "[j]ust to continue the business.  I know my father was not there anymore, so they were going to be there by themselves, and so there I thought that would be a fair compromise."  *Id.* at 9.  Exactly the reason for a "compromise" was not provided by Mr. Fernandez, Jr., since he did not propose that he or any of his siblings work at the business.  *Id.* at 9-10.  At that time, MCM operated four parking lots but the buildings at three of those lots were up for sale.[4]  Thus, explained Mr. Fernandez, Jr., "we never knew exactly if MCM was going to last three months or six months or so forth."  *Id.* at 13.  As a result, the duration of Mr. Fernandez, Jr.'s proposal "was kind of hard to say.  So this was kind of like a month-to-month thing until we knew something more definite."  *Id.*

MCM made payments in April 2006 to Margarita Fernandez, the widow of Mr.

---

[4]  The three buildings had common ownership and were known as the "Rockrose Properties." They are located on 15th Street N.W., north of K Street, N.W., in Washington, D.C.  The fourth garage operated by MCM was the G Street Garage, at 1310 G Street, N.W., about seven blocks away.

Fernandez, Sr., constituting one-third of the total salaries but such payments were not continued past

that month. The attorney for the Fernandez shareholders wrote to the Messrs. Jones on May 22,

2006, responding to an email from them:

> You mentioned that the arrangement made with Bert Jr. covered April
> 2006 only.  That was not our understanding.  We understood that
> dividing the administrative income into equal thirds would be a
> permanent arrangement, with checks issued to our father's name
> being an interim step until we reached an agreement on how to move
> forward with the distribution of the administrative income. . . .
> [Paying Bert Sr.'s salary to his heirs] was just a short-term solution
> (as was done in April).  It was our intention to then establish a more
> permanent arrangement of how the two families could continue to
> operate the business.

Pls.' Opp'n, Ex. F (Letter from Thomas J. Nehilla, Esq., dated May 22, 2006).  The lawyer's letter

also noted that "the three (3) month-to-month [MCM-operated garage] locations are for sale and, of

course, we have previously advised you that our 50% ownership did not wish to renew the G Street

location lease."  *Id.*

Inasmuch as MCM was constrained from pursuing the G Street lease by opposition

from the Fernandez family, the Jones brothers formed a new company, MCM Parking Solutions,

Inc., "solely for the purpose of pursuing renewal of the G Street lease, after the Plaintiffs refused to

go forward on that lease renewal. . . ." Defs.' Facts ¶ 26.[5]  MCM Parking Solutions, Inc. renewed

the G Street lease, but did not replace the old MCM Parking Co., Inc. signs to clarify that it was

MCM Parking Solutions, Inc., and not MCM Parking Co., Inc., that was operating the G Street

garage.  MCM Parking Solutions, Inc. has since operated the G Street garage  "at a loss and there

---

[5] Plaintiffs attempt to deny this statement but offer only argument about additional facts and
do not actually deny the statement at all.  *See* Pls.' Facts ¶ 26.

is no credible evidence to the contrary." *Id.* ¶ 28.[6]  Nor is there any evidence in the record "that any persons did or did not park in the G Street garage because of the MCM sign being present." *Id.* ¶ 33. Indeed, Plaintiff Lisa Novak, a Fernandez daughter, testified that "I'm not contending that people wouldn't [have] park[ed] there" if the sign had read MCM Parking Solutions, Inc. and not MCM Parking Co., Inc.  Pls.' Opp'n, Ex. A (Deposition of Lisa Novak) at 83-84.  The only evidence of any confusion between MCM Parking Solutions, Inc. and MCM Parking Co., Inc. is a few instances where vendors, such as PEPCO, billed MCM Parking Co., Inc. for services delivered to the G Street garage when it was operated by MCM Parking Solutions, Inc.  *See id.*, Ex. O (several invoices from vendor PEPCO addressed to "MCM Parking Co. Inc." and one invoice from Barbee-Curran Elevator Co., Inc. to "MCM Parking"); *see also id.*, Ex. L (two invoices from owner of G Street garage addressed to "MCM Parking Company").

MCM Parking Co., Inc. lost the three garages at the Rockrose Properties when the new owners of those buildings put the leases up for bid.  It lost the G Street garage when the Fernandez family chose not to take the risk that it could be made profitable.  Defs.' Facts ¶ 36; Pls.' Facts ¶ 36.  MCM Parking Co., Inc. no longer operates any parking garages.

The Fernandez family and MCM Parking Co., Inc., advance a multiple-count Complaint against Rocky and Timmy Jones and MCM Parking Solutions, Inc.  Count I alleges breach of contract because Mr. Fernandez, Sr.'s salary is no longer paid to the Fernandez family; Count II alleges breach of fiduciary duty because the Messrs. Jones established MCM Parking Solutions, Inc.; Count III alleges fraud because the Messrs. Jones "led Plaintiffs to believe . . . that

---

[6]  Plaintiffs attempt to deny this statement by citing to MCM Parking Solutions, Inc. tax returns showing that from August 2006 through December 2008 the company generated $1,646,188 in sales revenue.  *See* Pls.' Facts ¶ 28.  But sales revenue is not coterminous with profit.

continued operation of the G Street Garage was not financially viable or feasible," Compl. ¶ 128; Count IV alleges wrongful diversion of corporate opportunity because MCM Parking Solutions, Inc. bid on the G Street garage; Count V alleges conversion because of the bid on the G Street garage; Count VI alleges misappropriation because MCM Parking Solutions, Inc. utilized the name, goodwill and other assets of MCM Parking Co., Inc.; Count VII alleges unjust enrichment because of the operation of MCM Parking Solutions, Inc.; Count VIII alleges trade name and trade dress infringement under the Lanham Act because of MCM Parking Solution, Inc.'s use of the trade name "MCM Parking" and trade dress similar to that used by MCM Parking Co., Inc.; Count IX alleges that MCM Parking Solutions, Inc. passed itself off as MCM Parking Co., Inc. in violation of the Lanham Act; Count X alleges false advertising because MCM Parking Solutions, Inc. misrepresented to the public that the G Street garage was operated by MCM Parking Co., Inc.; Count XI alleges common law trademark infringement because of the use of the name MCM Parking Solutions, Inc.; Count XII alleges tortious interference with business relations and contract because MCM Parking Solutions, Inc. bid on the G Street garage; Count XIII alleges tortious interference with prospective contracts because customers would enter into contracts with MCM Parking Solutions, Inc. and not MCM Parking Co., Inc.; Count XIV alleges conspiracy because of the prior acts as alleged; Count XV calls for an accounting; and Count XVI calls for the appointment of a custodian to operate MCM Parking Co., Inc.

The Complaint asserts that the Court has federal question jurisdiction over the counts alleging violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and supplemental jurisdiction over the remaining claims. *See* Compl. ¶ 13. Defendants move for summary judgment. *See* Dkt. # 29. Plaintiffs' oppose. *See* Dkt. # 30.

## II.  LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Moreover, summary judgment is properly granted against a party that "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson*, 477 U.S. at 248.  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Id.*; *Celotex*, 477 U.S. at 322.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary

judgment. *Id.* In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III. ANALYSIS

As no diversity jurisdiction is asserted, the linchpin to the Court's jurisdiction over this matter is the federal Lanham Act counts. Count VIII alleges "Unfair Competition under Common Law and Lanham Act § 43(a): Trade Name and Trade Dress Infringement" and Count IX alleges "Unfair Competition under Lanham Act § 43(a): Deceptive Trade Practices; Passing Off."[7] In addition, while not specifically referencing the Lanham Act, Count X alleges "False Advertising" and Plaintiffs assert in their opposition to Defendants' motion for summary judgment that Count X also is brought under the Lanham Act.[8] *See* Pls.' Opp'n to Defs.' Mot. for Summ. J. [Dkt. # 30] at 8 n.1; *but see* Pls.' Statement of the Case [Dkt. # 16] at 3 (asserting that all counts except for Counts VIII and IX "allege violations of, and seek remedies under, the common law").

Section 43(a) of the Lanham Act provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false

---

[7] The Lanham Act provides a cause of action for trade name and dress infringement and for passing off in § 43(a)(1)(A). *See* 15 U.S.C. § 1125(a)(1)(A).

[8] The Lanham Act provides a cause of action for false advertising in § 43(a)(1)(B). *See* 15 U.S.C. § 1125(a)(1)(B).

designation or origin, false or misleading description of fact, or false or misleading representation of fact, which —

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

## A.  Trade Name and Trade Dress Infringement (Count VIII)

"To prevail on a claim of trademark infringement in the D.C. Circuit, the plaintiff must show (1) that it owns a valid trademark, (2) that its trademark is distinctive or has acquired a secondary meaning, and (3) that there is a substantial likelihood of confusion between the plaintiff's mark and the alleged infringer's mark."  *Globalaw Ltd. v. Carmon & Carmon Law Office*, 452 F. Supp. 2d 1, 26 (D.D.C. 2006) (citation and quotation marks omitted).  "Neither MCM's trade name nor its trade dress are registered with the U.S. Patent and Trademark Office."  Compl. ¶ 174.  But "Plaintiff MCM Parking Co., Inc. has used its trade name in and around the District of Columbia for more than 35 years."  *Id.* ¶ 172.  "In the ordinary case of parties competing under the same mark in the same market, it is correct to say that prior appropriation settles the initial question of ownership, and the service mark rights of the senior user trump those of the junior user."  *Globalaw*, 452 F. Supp. 2d at 27.  Accordingly, Plaintiff MCM Parking Co., Inc., as the senior user,  is the owner of the trade name "MCM Parking Co., Inc." and its trade dress.

However, that does not necessarily mean that the trade name MCM Parking Co., Inc. and its trade dress are entitled to protection under the Lanham Act.  In order to receive protection, Plaintiffs must show that the trade name and trade dress are either inherently distinctive or have acquired a secondary meaning.  *See Globalaw*, 452 F. Supp. 2d at 28.  As already noted, "[n]either MCM's trade name nor its trade dress are registered with the U.S. Patent and Trademark Office." Compl. ¶ 174.  As such, Plaintiffs bear the burden of proving the distinctiveness of MCM Parking Co., Inc.'s trade name and trade dress.  *See Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1041 (D.C. Cir. 1989); *Globalaw*, 452 F. Supp. 2d at 30.  Plaintiffs do not allege that either MCM Parking Co., Inc.'s trade name or its trade dress is inherently distinctive.[9]  Rather, Plaintiffs assert that "due to the fact that MCM has been in business for over 35 years, its trade name and trade dress have developed a secondary meaning within the minds of the relevant public, and thus, both the trade name and trade dress are afforded protection against infringement."  Compl. ¶ 175.

Trade names and trade dress that are not inherently distinctive "acquire trademark protection only upon proof of secondary meaning — *i.e.*, upon proof that the public recognizes only one source of the product or service."  *Blinded Veterans*, 872 F.2d at 1040.  "[A] term has acquired secondary meaning when 'the primary significance of the term in the minds of the consuming public is not the product but the producer'."  *Id.* (quoting *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118 (1938)).  "The prime element of secondary meaning is a *mental association* in buyers' minds

---

[9] Because Plaintiffs have failed to plead it, the Court finds that Plaintiffs have conceded that neither MCM Parking Co., Inc.'s trade name nor its trade dress is inherently distinctive.  *See U.S. Express, Inc. v. U.S. Express, Inc.*, 799 F. Supp. 1241, 1244 n.7 (D.D.C. 1992) (finding plaintiff conceded terms were not inherently distinctive by not asserting that they were).  Thus, the Court need not belabor the point further.

between the alleged mark and a single source of the product." 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 15:5 (4th ed. 2009) (emphasis in original). "To acquire a secondary meaning in the minds of the buying public, a labelled product, when shown to a prospective customer, must prompt the reaction, 'That is the product I want because I know that all products with that label come from a single source and have the same level of quality.'" *Id.* § 15:11.

"'Proof of secondary meaning entails vigorous evidentiary requirements.'" *Boston Beer Co. Ltd. P'ship v. Slesar Bros. Brewing Co., Inc.*, 9 F.3d 175, 181 (1st Cir. 1993) (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 125 (4th Cir. 1990)); *see also Thompson Med. Co., Inc. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir. 1985) (same). In addition to showing that "a substantial portion of the consuming public associates" the trade name MCM Parking Co., Inc. and its trade dress specifically with the parking garages it operated, *Boston Beer*, 9 F.3d at 182, Plaintiffs also must show that "these consumers base their purchasing decisions upon seeing" the trade name MCM Parking Co., Inc. and its trade dress. *Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 20 (1st Cir. 2004). "The plaintiff can meet this evidentiary burden through the use of direct evidence, such as consumer surveys or testimony from consumers, or through the use of circumstantial evidence[,]" such as "'(1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture.'" *Id.* (quoting *Boston Beer*, 9 F.3d at 182).

Judged against this standard, Plaintiffs' trade name and trade dress infringement claim cannot survive summary judgment. Plaintiffs have produced no direct evidence of secondary meaning, such as surveys or testimony from D.C. area car parkers demonstrating that they associate

the trade name MCM Parking Co., Inc. and its trade dress with MCM's parking garages. *See U.S. Express*, 799 F. Supp. at 1245-46 ("the failure to produce any evidence of consumer association of the term 'U.S. Express' with Plaintiff's services, even in the form of *current* survey evidence, testimonials from customers and the like, fatally undermines Plaintiff's claim") (emphasis in original). Nor have Plaintiffs produced evidence that D.C. area car parkers base their parking decisions upon seeing the trade name MCM Parking Co., Inc. and its trade dress. The only piece of evidence in the record supporting the acquisition of secondary meaning is that "MCM Parking Co., Inc. has used its trade name in and around the District of Columbia for more than 35 years." Compl. ¶ 172. Even drawing all justifiable inferences in Plaintiffs' favor, that bare fact, standing alone, is insufficient to infer secondary meaning in this context. After all, the product here is a parking garage, not a consumer product or service which competes on factors other than location and price. Based on this record, no reasonable jury could find that the trade name MCM Parking Co., Inc. or its trade dress had acquired secondary meaning. *See U.S. Express*, 799 F. Supp. at 1244 ("the Court finds that Plaintiff is not entitled to relief because the Plaintiff has not met its burden of proof in demonstrating that the term has acquired a secondary meaning so as to warrant protection from infringement"). Plaintiffs' trade name and trade dress infringement claim (Count VIII) will be dismissed.

### B.  Deceptive Trade Practices; Passing Off (Count IX)

Even if the trade name MCM Parking, Inc. and its trade dress are not protected from infringement, Plaintiffs may still have a cause of action if Defendant MCM Parking Solutions, Inc. passed itself off as MCM Parking Co., Inc. *See Blinded Veterans*, 872 F.2d at 1042. However, Defendant MCM Parking Solutions, Inc.'s use of MCM's trade name and trade dress "without

more[] does not give rise to an unfair competition claim under section 43(a) of the Lanham Act." *Id.* at 1043.  Rather, its use of MCM's trade name and trade dress "may give rise to an unfair competition claim if [its] failure adequately to identify itself as distinct from [MCM Parking Co., Inc.] causes confusion or likelihood of confusion." *Id.*  Further, "a court will not act to remedy or prevent 'confusion generated by a mere similarity of names.'" *Id.* at 1045 (quoting *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 940 (7th Cir. 1986)).  Plaintiffs "must prove that the likely *effect* of [Defendants'] actions is to induce the public to think that ["MCM Parking Solutions, Inc.] is [MCM Parking Co., Inc.]." *Id.* at 1046 (emphasis in original).  "What is essential," the D.C. Circuit has underscored, "is evidence that people associate ["MCM Parking"] with [MCM Parking Co., Inc.] per se and that, because of specific actions by [Defendants] that increase the risk of confusion, people are likely to think [MCM Parking Solutions, Inc.] is [MCM Parking Co., Inc.]." *Id.*  Accordingly, in order to recover for passing off, Plaintiffs must show "what has been called 'de facto secondary meaning' — *i.e.*, that people associate the . . . term ["MCM Parking"] with [MCM Parking Co., Inc.]." *Id.* at n.24.

 For the reasons already discussed in connection with Plaintiffs' trade name and trade dress infringement claim, Plaintiffs' deceptive trade practices and passing off claim also cannot survive summary judgment because Plaintiffs have failed to show de facto secondary meaning. Other than one piece of circumstantial evidence, length of use, the record is bereft of any evidence that D.C. area car parkers associate "MCM Parking" with MCM Parking Co., Inc.  Further, the sparse evidence of confusion proffered by Plaintiffs — invoices from vendors that billed MCM Parking Co., Inc. and not MCM Parking Solutions, Inc. for services rendered at the G Street garage — appears to have been generated by a similarity of names, not a mental association between the

trade name and dress of MCM Parking Co., Inc., and its source.  No reasonable jury could find that the consuming public associate "MCM Parking" with MCM Parking Co., Inc. based on nothing more than these few isolated instances of confusion by vendors.  *See id.* at 1046 ("it is not enough . . . to show confusion that is the natural consequence of the two organizations' use of . . . [similar] names").  Plaintiffs' deceptive trade practices and passing off claim (Count IX) will be dismissed.

### C.  False Advertising (Count X)

Still remaining is Plaintiffs' false advertising claim, which Plaintiffs now assert also is brought under the Lanham Act.  In order to recover under the Lanham Act for false advertising, Plaintiffs must show that Defendants "'made statements of fact in [their] commercial advertising promotion that were (1) false or misleading, (2) actually or likely deceptive, (3) material in their effects on buying decisions, (4) connected with interstate commerce, and (5) actually or likely injurious to the plaintiff[s]." *Globalaw*, 452 F. Supp. 2d at 58 (quoting *Dial A Car, Inc. v. Transp., Inc.*, 884 F. Supp. 584, 592 (D.D.C. 1995)).  "'A Lanham Act plaintiff must allege and prove that an alleged false or misleading representation of fact was literally false or misleading to the public or verifiably false or misleading.'" *Id.* (quotation marks and citation omitted).

Plaintiffs assert that "[t]he false representation that New MCM is the same business as MCM, *impliedly* contained in Defendants' advertising and signage, is likely to deceive and influence the customers and prospective customers of MCM."  Compl. ¶ 190 (emphasis added).  In other words, Plaintiffs allege that Defendants' commercial use of "MCM Parking" constituted a false statement of fact that MCM Parking Solutions, Inc. was the same as MCM Parking Co., Inc.  Because Plaintiffs' false advertisement claim is "predicated on [their] claim to have exclusive rights" to the trade name MCM Parking Co., Inc. and its trade dress, a claim the Court already has rejected,

-14-

it too must be dismissed. *Globalaw*, 452 F. Supp. 2d at 58. Inasmuch as Plaintiffs "do[] not have protectable trade mark rights" in MCM Parking Co., Inc. and its trade dress, "Defendants have not misrepresented" the source of the services. *Id.* Plaintiffs' false advertising claim (Count X) will be dismissed.

### D. The Remaining Claims

Plaintiffs assert that the Court has supplemental jurisdiction over the remaining local law claims. *See* Compl. ¶ 13. 28 U.S.C. § 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862, 1866 (2009). However, the Supreme Court has instructed that "[c]ertainly, if the federal claims [supporting supplemental jurisdiction] are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). That being the case here, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining local law claims. Plaintiffs' local law claims will be dismissed without prejudice.

### IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment [Dkt. # 29] as follows: Counts VIII, IX, and X of the Complaint will be dismissed on the merits to the extent they allege violations of the Lanham Act; all other claims, including non Lanham

Act claims in Counts VIII, IX, or X of the Complaint, will be dismissed without prejudice.   A

memorializing Order accompanies this Memorandum Opinion.


Date: September 2, 2009                                            /s/
                                                                    ROSEMARY M. COLLYER
                                                                    United States District Judge